UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

ELIAS HEARD,

    Petitioner,

V.

FRANCISCO QUINTANA, Warden,

    Respondent.

Civil Action No. 5: 18-166-KKC

**MEMORANDUM OPINION AND ORDER**

\*\*\* \*\*\* \*\*\* \*\*\*

Federal inmate Elias Heard has invoked the habeas corpus statute, 28 U.S.C. § 2241, to challenge the Bureau of Prisons ("BOP") calculation of his prior custody credits. [R. 6] The government has filed its response [R. 15], and Heard has filed two replies [R. 16, 17]. Having thoroughly reviewed the record, it is evident that the BOP has properly calculated Heard's sentence credits, and the petition will be denied.

**I.**

In October 2011, Heard was arrested by police in Newport, Kentucky for several state felony offenses, charges later dismissed in deference to a subsequent federal prosecution. In April 2012, a federal grand jury in Covington, Kentucky issued an indictment charging Heard with drug trafficking and firearms offenses. One month later, while in the custody of Ohio officials, Heard was sentenced to a 15-month term of imprisonment by the Municipal Court of Hamilton County, Ohio for fleeing and eluding police in Case No. B1200560, and began serving his state sentence at that time. In August 2012 Heard was transferred to federal custody pursuant to a writ of habeas corpus *ad prosequendum*.

In October 2012, Heard reached an agreement with the government to plead guilty to possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(b)(1)(A) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) in exchange for the dismissal of a felon-in-possession count. The plea agreement contained no provision for a recommended sentencing range, nor did it indicate whether the federal sentence should be served consecutively to or concurrently with Heard's state prison term. In January 2013, the trial court imposed a cumulative 123-month term of imprisonment for the federal offenses, that sentence to be served concurrently with the 15-month Ohio sentence Heard was already serving. Heard was then returned to Ohio custody to serve the remainder of his state sentence. *United States v. Heard*, No. 2: 12-CR-19-DLB-CJS-1 (E.D. Ky. 2012).

Heard completed service of his state sentence three months later and was transferred into federal custody to continue service of his federal sentence. Shortly thereafter he requested that the BOP review its calculation of his prior custody credits. The BOP awarded 112 days of credits pursuant to *Willis v. United States*, 449 F. 2d 923 (5th Cir. 1971) for time that Heard had spent in state pretrial custody in early 2011 that would not otherwise be effectively credited towards his federal sentence. [R. 6-2 at Page ID #38]

Unsatisfied, Heard filed a grievance with the warden seeking credit from August 16, 2012 (the date he was arraigned after being taken into federal custody pursuant to the writ) to January 4, 2013 (the date his federal sentence was imposed), contending without explanation that "the U.S. District Court's order of concurrency was what is referred to as 'full concurrency.'" [R. 6-2 at Page ID #34] The warden responded that Heard's sentence commenced on January 4, 2013 pursuant to 18 U.S.C. § 3585(a), and credit for pretrial custody before that date was precluded by 18 U.S.C. § 3585(b). [R. 6-2 at Page ID #32-33] On appeal Heard asserted that the warden's denial was non-

responsive because his claim was based upon 18 U.S.C. § 3584(a), not § 3585(b). The regional office noted that Heard's August 2012 transfer into federal custody pursuant to a writ of habeas corpus *ad prosequendum* did not effect a legal transfer of custody for purposes of calculating jail time credits, and reiterated its position that § 3585(b) precluded the additional credits sought. [R. 6-2 at Page ID #38-40] In his appeal to the Central Office, Heard again stated that his claim to relief was based upon the "District Court's decision to impose my federal term of imprisonment concurrently with a state term of imprisonment," and alleged that his plea agreement "consisted of my being credited with [all jail time] I had served on the state term of imprisonment toward service of my federal term of imprisonment." The Central Office denied relief, noting that the time period for which Heard sought credit had already been credited against his Ohio sentence and hence § 3585(b) would not permit it to be counted a second time against his federal sentence. [R. 6-2 at Page ID #48-50]

## II.

In his § 2241 petition, Heard repeats his contention that the BOP has not given him all the pretrial custody credit he is due, asserting that the BOP has not "applied" the federal court's order of concurrent sentencing. [R. 6 at Page ID #21] He also states that the BOP improperly treated some or all of the time after his arrest by local police as "inoperative time" under BOP Program Statement 5880.28. [R. 6 at Page ID #22; R. 6-1 at Page ID #29-30] Finally, Heard complains that the BOP did not "interview" either the federal judge or the Ohio judge "for their commentary and clarification of their rulings and judicial intent." [R. 6 at Page ID #22]

In its response to the petition, the government explains at length that Heard did not come into the federal government's legal custody in August 2012 merely because he was borrowed pursuant to a writ, and thus the credit he seeks is barred by § 3585(b) because it has already been

3

applied to his Ohio sentence. [R. 15 at Page ID #187-193] However, these arguments are more in the nature of a general defense of the BOP's custody calculations than responsive to the claims Heard actually makes in his petition. The government does not respond to Heard's claims regarding "inoperative time" and its asserted obligation to interview judges regarding the intent of their rulings.

In his first reply Heard offers no argument in support of his original claims, but responds to the government's arguments by asserting for the first time that the writ of habeas corpus *ad prosequendum* formally and legally transferred him into federal custody. He also states (incorrectly) that his plea agreement contemplated a concurrent sentence for a specified period of time, and that the federal prosecutor acted in bad faith knowing that the BOP would not honor it. [R. 16] In his second reply, Heard asserts (again incorrectly) that it is the federal trial court, not the BOP, who determines prior custody credits by setting them forth in its judgment, and the BOP's refusal to follow the trial court's directions would violate the separation of powers doctrine. [R. 17]

Given Heard's vague and terse expression of his claims in his petition, the government has understandably struggled to grasp upon what legal grounds, precisely, Heard claims entitlement to relief. Of course, Heard exhausted only that small subset of grounds for relief that he fully and fairly presented through the BOP's Inmate Grievance Program. *Fazzini v. Northeast Ohio. Corr. Center*, 473 F.3d 229, 232 (6th Cir. 2006). The government having apparently chosen to overlook Heard's failure to exhaust the bulk of the grounds for relief he now asserts, the Court will address all of the Heard's arguments, including those unaddressed by the government.

Calculation of a federal prisoner's sentence, including both its commencement date and any credits for custody before the sentence is imposed, is determined by federal statute:

(a) A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences –

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585. The BOP implements § 3585 through Program Statement 5880.28.

Section 3858(a) establishes when a federal sentence commences. If a federal sentence is ordered to run concurrently with pre-existing state sentence, the federal sentence begins to run when the federal sentence is imposed. Cf. *Doan v. Lamanna*, 27 F. App'x 297, 299 (6th Cir. 2001). Heard's federal sentence therefore began to run on January 3, 2013.

Section 3585(b) establishes whether a defendant can obtain credit for time spent in custody before the sentence commences. Here, Heard seeks credit from August 16, 2012, a date shortly after he was transferred into federal custody pursuant to a writ of habeas corpus *ad prosequendum*, to January 4, 2013, the date his federal sentence was imposed. However, as the Bureau of Prisons correctly noted, when a prisoner is borrowed from state authorities pursuant to such a writ to face a federal prosecution, the state retains "primary custody" over the defendant. *Rios v. Wiley*, 201 F.3d 257, 274 (3d Cir. 2000) ("[A] prisoner detained pursuant to a writ of habeas corpus *ad prosequendum* remains in the primary custody of the first jurisdiction unless and until the first sovereign relinquishes jurisdiction over the prisoner.") (superseded on other grounds by statute as recognized in *United States v. Saintville*, 218 F.3d 246 (3d Cir. 2000)); *United States v. Evans*, 159

F.3d 908, 911-12 (4th Cir. 1998). Accordingly, the time Heard spent in custody during this period was applied to his state, not federal, sentence.

But Heard's argument does not appear to be based on § 3585(b). In his grievances and in his complaint, Heard indicates his belief that because the federal court ordered his sentence to run concurrently with his state sentence, § 3584(a) required his sentence to be "fully concurrent" – meaning starting on the same date – with his state sentence. See [R. 6 at Page ID #21; R. 6-2 at Page ID #34] If this is Heard's argument, it is without merit.

There are only two ways a federal prisoner can receive credit for time spent in detention before a federal sentence is imposed:

> Backdating a federal sentence [to commence prior to its imposition] conflicts with 18 U.S.C. § 3585(a), which states that a federal prison term may commence only when the defendant is received into custody. Furthermore, the term "credit" can refer to different concepts. The award of "credit" against a sentence, as described under 18 U.S.C. § 3585(b), is within the exclusive authority of the BOP. In contrast, a court has authority, pursuant to Guidelines § 5G1.3(c), to fashion a sentence that accounts for time already served, and "credit for time served on a pre-existing state sentence is within the exclusive power of the sentencing court." The Guidelines caution sentencing courts that, "[t]o avoid confusion with the Bureau of Prisons' exclusive authority provided under 18 U.S.C. § 3585(b) to grant credit ... any downward departure under application note [3(E) in § 5G1.3] be clearly stated ... as a downward departure pursuant to § 5G 1.3(c), rather than as a credit for time served."

*United States v. Gaskins*, 393 F. App'x 910, 914 (3d Cir. 2010) (citations and internal quotation marks omitted). Here, the trial court ordered Heard's federal and state sentences to run concurrently, but "even where a sentencing court orders a federal sentence to run concurrently with a pre-existing state sentence, the federal sentence is deemed to run concurrently only with the *undischarged* portion of the prior state conviction." *Belcher v. Cauley*, No. 0: 08-132-HRW, 2009 WL 464932, at *2-3 (E.D. Ky. Feb. 24, 2009) (noting that § 3585(a) bars a district court from

ordering a federal sentence to commence prior to its imposition); see also *Heard v. U.S. Bureau of Prisons*, No. 09-383-GFVT, 2011 WL 1226869 (E.D. Ky. Mar. 30, 2011) (same).

The trial court's order for concurrent sentences therefore did not and could not cause Heard's federal sentence to commence retroactive to the date his state sentence was imposed, let alone to the date of his state arrest. Cf. *Morales v. Zenk*, 414 F. App'x 383, 386-87 (3d Cir. 2011); *Schleining v. Thomas*, 642 F. 3d 1242, 1244 (9th Cir. 2011); *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980) ("[A] federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served."). See also *United States v. Wells*, 473 F.3d 640, 645 (6th Cir. 2007) ("[t]he district judge had no statutory authority to order that the defendant's federal sentence should 'commence' [before the date his sentence was imposed]."). And because Ohio credited the period in question against his state sentence, the express terms of § 3585(b) prevented those days from being "double counted" against his federal sentence. *United States v. Wilson*, 503 U.S. 329, 335, 337 (1992) ("[A] defendant [can] not receive a double credit for his detention time" under § 3585(b)); *United States v. Lytle*, 565 F. App'x 386, 392 (6th Cir. 2014) ("Time which has been credited towards service of a state sentence may not be 'double counted' against a federal sentence."); *Dunlap v. Ives*, No. 11-271-GFVT, 2012 WL 1711379, at *3 (E.D. Ky. May 15, 2012).

Contrary to Heard's assertion in his responses, it is the Bureau of Prisons rather than the sentencing court which has the exclusive authority to determine when a sentence commences and to calculate any prior custody credits under § 3585(b). *United States v. Wilson*, 503 U.S. 329, 331 (1992). Heard is further incorrect regarding the substance of his plea agreement: it did not establish any specific federal sentence, did not indicate whether that sentence would be served concurrently with or consecutively to his existing state sentence, and did not state what prior custody credits he

would receive. *United States v. Heard*, No. 2: 12-CR-19-DLB-CJS-1 (E.D. Ky. 2012) [R. 22 therein].

In his petition Heard also claimed that the BOP was treating the time period in question as "inoperative time" pursuant to BOP Program Statement 5880.28. [R. 6 at Page ID #22; R. 6-1 at Page ID #29-30] Inoperative time refers to time when, after a federal sentence is imposed, the defendant is no longer in "official detention" because he or she has escaped, been held in civil contempt, on been released pending appeal. None of these situations apply to Heard. More fundamentally, the BOP's responses to his inmate grievances and its sentence calculations make plain that it did not apply the "inoperative time" rules when making its prior custody calculations. See [R. 15-2 (Declaration of Forest Kelly, Correctional Program Specialist) at Page ID #221-23]

Finally, Heard complains that the BOP did not "interview" either the federal judge or the Ohio judge "for their commentary and clarification of their rulings and judicial intent." [R. 6 at Page ID #22] The BOP does not "interview" judges, federal or state, regarding their judgments or sentencing matters. Heard may be referring to the BOP's practice of contacting a federal sentencing judge for its recommendation or position when the BOP receives a request for a *nunc pro tunc* designation pursuant to *Barden v. Keohane*, 921 F.2d 476 (3rd Cir. 1990). See BOP Program Statement 5160.05 (2003). But the unique circumstances which may permit a *Barden* request simply do not exist here. The relief sought by Heard does not implicate *Barden* at all, and the BOP therefore did not err in not following the procedures set forth in PS 5160.05.

Accordingly, it is **ORDERED** as follows:

1. Petitioner Elias Heard's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [R. 6] is **DENIED**.

2. This action is **DISMISSED** and **STRICKEN** from the Court's docket.

3. Judgment shall be entered contemporaneously with this Memorandum Opinion and Order.

Entered: March 7, 2019.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY